**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | |
|---|---|
| RESOURCE DEALER GROUP, INC.,<br>1000 N. Milwaukee Avenue<br>Glenview, Illinois 60025<br><br>Plaintiff,<br><br>v.<br><br>THOMAS ELIAS TOMPROS<br>4998 Threshfield Court<br>Ellicott City, Maryland 21043<br><br>SERVE ON:<br>Thomas Elias Tompros<br>4998 Threshfield Court<br>Ellicott City, Maryland 21043<br><br>and<br><br>ATLANTIC DEALER SERVICES, LLC<br>4998 Threshfield Court<br>Ellicott City, Maryland 21043<br><br>SERVE ON:<br>Thomas Elias Tompros<br>4998 Threshfield Court<br>Ellicott City, Maryland 21043<br><br>Defendants. | Civil Action No.________________ |

**VERIFIED COMPLAINT**

Plaintiff Resource Dealer Group, Inc. ("RDG"), by and through its undersigned attorneys, for its Verified Complaint against Defendants Thomas Elias Tompros ("Tompros") and Atlantic Dealer Services, LLC ("ADS")(collectively, the "Defendants"), avers as follows:

**Nature Of This Action**

1. This is an action for temporary, preliminary and permanent injunctive relief to stop the tortious and illegal conduct of the Defendants. The Defendants have caused and are continuing to cause irreparable harm to RDG by (a) breaching valid and enforceable contracts that include covenants not to compete with RDG, (b) making unauthorized use of RDG's confidential and proprietary information, and/or (c) interfering with RDG's current and prospective business relationships with its customers. In addition, Tompros breached his duty of loyalty and fidelity to RDG.

2. Defendants have refused to cease and desist from their tortious and illegal conduct. RDG therefore brings this action for breach of contract (Count I), tortious interference with prospective business advantage (Count II), unjust enrichment (Count III), misappropriation of trade secrets (Count IV), and unfair competition (Count V). In addition to injunctive relief, RDG seeks compensatory, statutory and punitive damages.

**Jurisdiction And Venue**

3. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 based on the diversity of citizenship of the parties and because the amount in controversy exceeds $75,000.

4. The Court also has personal jurisdiction over each of the Defendants as Tompros resides in the State of Maryland and ADS is a Maryland limited liability company with its principal place of business in Maryland.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) as Tompros resides in the District of Maryland and ADS is a Maryland limited liability company with its principal place of business within the District of Maryland. Venue is also proper in this District

pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion, if not all, of the events giving rise to RDG's claims occurred in this District.

**The Parties**

6. Plaintiff Resource Dealer Group, Inc. is an Illinois corporation with its principal place of business in Illinois. RDG provides marketing, training, and consulting services to automobile dealers, offering products such as credit life insurance, service and maintenance contracts, emergency services agreements, insurance, extended warranties, gap insurance, surety, consulting and training services, and other financial and insurance products offered by automobile dealers selling new and used vehicles.

7. In the early 1990's, RDG had the formal corporate name Pat Ryan & Associates, Inc. In 1995, Pat Ryan & Associates, Inc. changed its formal corporate name to Ryan Dealer Group, Inc. In 1996, Ryan Dealer Group, Inc. changed its name to Resource Dealer Group, Inc. Plaintiff RDG has the necessary rights and powers of enforcement of the Employment Contract as described herein.

8. Defendant Thomas Elias Tompros is a citizen of the State of Maryland. On or about October 3, 1983, Tompros began employment with RDG and, on or about July 1, 1992, entered into a Standard Employment Contract ("Employment Contract") (attached hereto as Exhibit A) with RDG. Tompros voluntarily resigned from RDG on or about December 15, 2004.

9. Defendant Atlantic Dealer Services, LLC ("ADS") is a limited liability company organized – by Tompros -- under the laws of the State of Maryland and having its principal place of business in Maryland.

## FACTS COMMON TO ALL COUNTS

10. Tompros' Employment Contract contained, *inter alia,* a number of restrictive covenants, including a covenant not to compete with RDG[1], a covenant not to solicit certain of RDG's customers and prospective customers, a covenant of fidelity and loyalty to RDG, and a covenant not to use or disclose confidential information learned during his employment with RDG.

11. Tompros ultimately rose to the level of Vice President at RDG where his duties included, but were not limited to, soliciting new business, servicing existing business, and implementing training and consulting services to automobile dealer customers in his assigned territory. At the time he resigned from RDG, Tompros' service territory included Maryland, Delaware, District of Columbia, Virginia, North Carolina and South Carolina.

12. Throughout his twenty-one years of his employment with RDG, Tompros became acquainted with and utilized confidential information and trade secrets including, but not limited to, client fee arrangements, agreements with automobile dealer customers, private and confidential financial agreements with automobile dealer customers, production data and reports relative to existing customers, private label agreements, and other confidential information considered vital to the business and growth of RDG.

13. On or about June 14, 2004, while still employed as Vice President with RDG, Tompros founded and organized Atlantic Dealer Services, LLC, signing and filing Articles of Organization with the Maryland State Department of Assessments and Taxation. See Exhibit B

[1] ¶(9) of the Employment Contract provides, "The Company and Employee agree that wherever this Agreement makes reference to the "Company" that term shall include any subsidiary or affiliate of the Company which participates in any Business transacted through the efforts of the Employee or about which the Employee acquires confidential or proprietary information." See Ex. A hereto at ¶(9). Additionally, ¶(15) of the Employment Contract provides, "This Agreement shall be binding upon and inure to the benefit of any successor of the Company and, unless clearly inapplicable, references herein to the Company shall be deemed to include any successor of the Company." *Id*. at ¶(15).

hereto. The ADS Articles of Organization state, in pertinent part, that the purpose for which the company was formed included "[t]o offer, sell, procure and provide insurance; to provide said insurance on behalf of and for other persons ….." Exhibit B at ¶ THIRD (a).

14. On or about December 15, 2004, Tompros voluntarily resigned his employment with RDG.

15. Upon information and belief, Tompros started working on behalf of ADS in approximately June 2004 -- several months before he resigned from RDG. Tompros and ADS are competing with RDG by offering and providing to RDG'scustomers and prospective customers the same financial and insurance products and services offered by RDG.

**Tompros Owes Contractual Duties To RDG**

16. Tompros signed the Standard Employment Contract attached hereto as Exhibit A, which contains a number of restrictive covenants related that remain valid and in full force and effect, including covenants not to compete and not to use or disclose confidential information learned during his employment with RDG. That Employment Contract also imposed on Tompros a duty of fidelity and loyalty to RDG while he was employed by RDG.

17. The Employment Contract signed by Tompros includes the following covenant of fidelity and loyalty, in pertinent part:

> The Employee shall devote his best efforts, his fidelity and loyalty and his full time to the promotion of the business of the Company ……During the employment of the Employee with the Company, the Employee agrees that he will not directly or indirectly in any way become employed by or represent any other business or enterprise in competition with the Company or its subsidiaries and affiliates or be instrumental in causing others to place any business through any enterprise in competition with the Company or its subsidiaries or affiliates.

(Ex. A, ¶ 3).

18. The Employment Contract signed by Tompros includes the following non-disclosure covenant:

> The Employee acknowledges that, in the course of his employment hereunder, he will become acquainted with confidential information of the Company, relating to persons, firms and corporations which are customers of the Company during the term of this Agreement, which confidential information includes, but is not limited to, lists of clients and prospective clients and their business requirements and the way services can be individually tailored to the needs of particular clients together with the programs devised for clients and the materials embodying them. The Employee agrees that he will not, without prior written consent of the Company, during the term of this Agreement or thereafter, disclose or make any use of such confidential information except as may be required in the course of his employment thereunder.

(Ex. A, ¶ 6).

19. The Employment Contract signed by Tompros includes the following non-competition/non-solicitation covenant, in pertinent part:

> ….. (A) the Employee agrees that he will not, during the term of this Agreement and for a period of two years following the termination of this Agreement, by himself or in combination with others, (1) solicit, or attempt to solicit, directly or indirectly, any of the Company's customers in the geographic area in which the Employee was performing services during the two years immediately preceding termination of this Agreement; nor shall he (2) solicit, or attempt to solicit, directly or indirectly, any of the customers of the Company or any affiliate of the Company about whom or which the Employee acquired confidential information during the term of this Agreement; nor shall he (3) induce, or attempt to induce, directly or indirectly, any agent or employee of the Company to disassociate from the Company or to become associated with any other enterprise; and (B) the Employee also agrees that he will not, during the term of this Agreement and for a period of one year following the termination of this Agreement, by himself or in combination with others, solicit or attempt to solicit, directly or indirectly, any of the Company's prospective customers in the

> geographic area in which the Employee was performing services who were being actively solicited by the Company within twelve months of the date of the termination of this Agreement.

(Ex. A, ¶ 7).

20. In signing the Employment Contract, Tompros stipulated and agreed that, in the event of a breach of any of the above-referenced covenants, RDG "shall be entitled to injunctive relief as well as any other applicable remedies at law or in equity." (Ex. A, ¶ 8).

21. Tompros' contractual obligations to RDG, including those referenced above, are valid and enforceable. Tompros received valuable consideration for his contractual promises as he enjoyed the benefits of employment with RDG for many years. The contractual obligations owed by Tompros ensure that RDG receives the benefit of its bargain and serve to further protect RDG's valuable confidential information.

**ADS' Business Model is Predicated on the Misappropriation and Use of RDG's Trade Secrets**

22. Throughout his twenty-one years of employment with RDG, and in furthering the business interests of RDG, Tompros cultivated and nurtured personal relationships with individuals at the many automobile dealerships in his vast service territory that were RDG's customers and prospective customers. In this capacity, Tompros learned which financial and insurance products and services were most attractive to these customers, how to most effectively market those products and services on behalf of RDG, and how to tailor and package to these customers the services and products offered by RDG.

23. With intimate knowledge of these facets of RDG's business model and its then-existing customers and prospective customers, on or about June 14, 2004, Tompros founded, organized and began operating Atlantic Dealer Services, LLC for the purpose of selling to

RDG's existing and prospective customers the very same financial and insurance products and services offered to those clients by RDG.

24. ADS' entire business model is predicated upon the misappropriation and use of RDG's confidential and proprietary information by Tompros and ADS.

**Defendants Have Stolen RDG's Trade Secrets and Misused RDG's Proprietary and Confidential Information**

25. As discussed above, Tompros founded and organized ADS while he was still employed as a Vice President of RDG and with intimate knowledge of RDG's business model and its customers and prospective customers and the financial and insurance products and services those customers had purchased. RDG's customer lists and business model are trade secrets. Tompros and ADS have used and are continuing to use this and other confidential and proprietary information in an effort to obtain business from RDG customers and prospective customers by unlawful means.

26. Tompros' knowledge of RDG's business model and its customers and prospective customers – and the types of financial and insurance products and services they have purchased from RDG -- has value in the market because it is based on information which itself is strictly confidential and proprietary information. Tompros gained this knowledge solely as a result of his decades of employment with RDG. The Defendants have misused or are threatening to misuse RDG's trade secrets and other confidential and proprietary information for their own benefit and to the detriment of RDG, in violation of Tompros' contractual agreements with RDG.

27. Upon information and belief, Defendants intend to further misuse confidential and proprietary information acquired during the course of Tompros' employment with RDG by servicing existing products purchased previously by RDG clients and by soliciting those clients

and others to purchase from ADS – a company that competes directly with RDG -- additional products and services offered by RDG.

**Tompros Has Breached His Employment Contract With RDG**

28. Tompros breached the duty of loyalty and fidelity contained in his Employment Contract by founding and organizing ADS while still employed by RDG as a Vice President and six months before he resigned from RDG.

29. Tompros breached and/or is threatening to breach the nondisclosure covenant contained in his Employment Contract by disclosing and/or making use of RDG confidential and proprietary information, including but not limited to lists of RDG customers and prospective customers, without the written consent of RDG and in order to further the competing business of ADS.

30. Tompros breached and/or is threatening to breach the noncompetition and nonsolicitation covenants contained in his Employment Contract by founding and organizing ADS while still employed by RDG as a Vice President and six months before he resigned from RDG. ADS competes directly with RDG by offering to RDG customers and prospective customers the same financial and insurance products and services offered by RDG.

31. Tompros breached and/or is threatening to breach the restrictive covenants in his employment agreement with RDG. Resulting injury to RDG has occurred and will continue unless the Defendants' actions are restrained and enjoined by the Court. Unless the Defendants are enjoined from engaging in their wrongful conduct, RDG will suffer further irreparable injury for which it has no adequate remedy at law.

32. As a result of their improper and unlawful conduct, Defendants have already enlisted at least one of RDG's long-time customers, the Criswell family of dealerships, resulting in damages to RDG of several hundreds of thousands of dollars annually.

**COUNT I**

**(Breach of Contract Against Tompros)**

33. RDG realleges and incorporates by reference Paragraphs 1 through 32 of the Complaint as if fully set forth herein.

34. Tompros entered into a valid and enforceable contract with RDG, which imposed upon him a duty of fidelity and loyalty to the interests of RDG during his time of employment with RDG. Ex. A at ¶3.

35. Tompros materially breached his Employment Contract with RDG, including the implied covenant of good faith and fair dealing and express covenant of fidelity and loyalty, by founding, organizing and becoming employed by ADS – a company that competes directly with RDG -- while he was still employed as Vice President with RDG and six months before he resigned from RDG. In this capacity, Tompros was instrumental in causing others to place business through ADS, an entity he formed for the express purpose of competing with RDG.

36. The Employment Contract also includes non-disclosure/confidentiality, non-competition, and non-solicitation covenants. Tompros materially breached the non-disclosure/confidentiality covenant by disclosing and making improper use of confidential and proprietary RDG information, including but not limited to lists of clients and prospective clients and their business requirements, without the prior written consent of RDG.

37. Tompros materially breached his Employment Contract with RDG by (1) soliciting or attempting to solicit, directly or indirectly, RDG customers in the geographic area in

which he had worked during the two years prior to resigning from RDG and/or about whom he had acquired confidential information while working for RDG and (2) soliciting or attempting to solicit, directly or indirectly, prospective RDG customers who were being actively solicited by RDG within twelve months of his resignation from RDG. Tompros, acting as ADS's agent, sold or offered to sell to those customers and prospective the same or similar financial and insurance products and services offered by RDG.

38. Tompros has committed and inevitably will commit further breaches of his Employment Contract with RDG unless appropriately restrained by this Court.

39. RDG has fulfilled in all material respects its obligations under the Employment Contract described herein. RDG will suffer irreparable harm for which no adequate remedy at law exists if Tompros is not enjoined from disclosing RDG's trade secrets and other confidential information, from working for ADS, from soliciting RDG's customers and from further competing improperly with RDG. A temporary restraining order is necessary because RDG will be irreparably injured before a hearing can be held on RDG's application for preliminary injunction. A temporary restraining order and a preliminary injunction are necessary in order to preserve RDG's rights pending a trial on the merits of this action. A permanent injunction is warranted by the plain language and requirements of Tompros' Employment Contract with RDG.

40. By his wrongful conduct, as set forth above, Tompros has breached his Employment Contract with RDG, with resulting damages to RDG.

41. RDG is entitled to a decree of specific performance directing Tompros to honor his contractual obligations and to cease his breaches of his Employment Contract described herein.

## COUNT II

**(Tortious Interference With Prospective Advantage Against ADS and Tompros)**

42. RDG realleges and incorporates by reference Paragraphs 1 through 32 of the Complaint as if fully set forth herein.

43. A valid contractual expectancy exists between RDG and its customers who purchased financial or insurance products or services offered by RDG. Based on its continuing relationship with these customers, RDG had a valid expectancy that its contractual relationships with its customers would continue in the future.

44. The Defendants were aware of the contractual expectancy between RDG and its customers.

45. The Defendants intentionally and willfully interfered with that contractual expectancy by improper means, including but not limited to improperly soliciting customers and/or prospective customers of RDG to purchase from ADS the same or similar financial and/or insurance products and/or services offered for sale by RDG.

46. As a result of Defendants' interference with RDG's contractual expectancy, at least one of RDG's long-time customers, the Criswell family of dealerships, has entered into contracts with ADS for products and/or services they had previously purchased from RDG.

47. As a direct and proximate result of their wrongful conduct, Defendants have caused and continue to cause RDG to suffer irreparable harm and damages.

## COUNT III

**(Unjust Enrichment Against ADS and Tompros)**

48. RDG realleges and incorporates by reference Paragraphs 1 through 32 of the Complaint as if fully set forth herein.

49. The wrongful conduct of the Defendants has conferred a substantial economic benefit on Defendants, who have been unjustly enriched.

50. It would be inequitable for ADS and Tompros to retain profits earned directly or indirectly by virtue of their wrongful conduct without payment of those profits to RDG. Tompros continued to collect from RDG his salary, benefits and bonuses after he had breached his employment contract and his duty of loyalty and fidelity to RDG on or about June 14, 2004 -- by forming ADS -- through the time of his resignation from RDG on December 15, 2004.

51. It would be inequitable for Tompros to retain the salary, benefits and bonuses he received from RDG from June 14, 2004 until the time of his resignation on December 15, 2004.

**COUNT IV**

**(Misappropriation of Trade Secrets Against Tompros and ADS)**

52. RDG realleges and incorporates by reference Paragraphs 1 through 32 of the Complaint as if fully set forth herein.

53. Information possessed by RDG and related to its business -- including but not limited to its business model and lists of existing and prospective customers -- constitutes trade secrets under the Maryland Trade Secrets Act, Md. Code Ann., Com. Law II § 11-1201, *et seq.* This information derives independent economic value, actual and potential, from not being generally known to and not being readily ascertainable to other persons who could obtain economic value from such information. This information is subject to reasonable efforts by RDG to maintain its secrecy.

54. As described above, upon information and belief, the Defendants have misappropriated and used RDG's trade secrets.

55. The Defendants are continuing to misappropriate RDG's trade secrets by, among other things, using such information – without the consent of RDG -- to further the business of ADS, an entity that competes directly with RDG.

56. As a direct and proximate result of their wrongful conduct, Defendants have caused RDG irreparable harm and damages.

**COUNT V**

**(Unfair Competition Against ADS and Tompros)**

57. RDG realleges and incorporates by reference Paragraphs 1 through 32 of the Complaint as if fully set forth herein.

58. By their conduct, Defendants have violated the principle that all business dealings must be done on the basis of honesty and fairness, without the taint of fraud or deception.

59. As a direct and proximate result of Defendants' wrongful conduct, Defendants have caused RDG irreparable harm and damages.

**PRAYER FOR RELIEF**

WHEREFORE, Resource Dealer Group, Inc. respectfully requests this Court to enter judgment against the Defendants, and hereby award Resource Dealer Group, Inc. temporary, preliminary, and permanent injunctive relief, including:

1. Enjoining Tompros, and all others in active concert or participation with him, from soliciting, or attempting to solicit, directly or indirectly, any of RDG’s customers in the geographic area in which he was performing services for RDG from December 15, 2002 to December 15, 2004;

2. Enjoining Tompros, and all others in active concert or participation with him, from soliciting, or attempting to solicit, directly or indirectly, any of RDG’s customers about whom or which he acquired confidential information while he was employed by RDG or any of its affiliates, subsidiaries or predecessors;

3. Enjoining Defendants, and all others in active concert or participation with them, from retaining, using, disclosing, or otherwise misappropriating any of RDG's

trade secrets and other confidential or proprietary information, including but not limited to RDG's lists of customers or potential customers;

4. Enjoining Tompros, and all others in active concert or participation with him, from inducing, or attempting to induce, directly or indirectly, any agent or employee of RDG to disassociate from RDG or to become associated with any other enterprise.

5. Requiring Defendants to certify in writing to the Court that each has returned to RDG all trade secrets and other confidential and proprietary information and has permanently and irretrievably erased from any computer memory or other electronic storage mechanism all information concerning or relating in any way to RDG and its respective products, services, customers and prospective customers;

6. Requiring Defendants, and all others in active concert or participation with them, to return all RDG material, contained in any format or medium whatsoever, in their possession, custody or control;

7. Requiring Defendants to cooperate in all respects in discovering the scope and effect of their wrongful conduct;

8. Requiring Defendants immediately to produce for inspection all personal and business computers; and

9. Requiring Defendants to submit immediately to expedited discovery, produce documents within three business days following service of requests for production, produce answers within three business days following service of interrogatories, and appear for deposition on three business days notice.

In addition, Resource Dealer Group, Inc. respectfully requests that this Court grant declaratory relief upholding the validity, applicability and enforceability of Tompros' Employment Contract; that the Court enter a decree of specific performance directing Tompros to perform all of his continuing obligations under his Employment Contract with RDG; that the Court order an accounting and disgorgement of all unlawfully earned profits by Defendants and all salary, bonuses and benefits paid to Tompros by RDG from June 14, 2004 through the date of his resignation, December 15, 2004; and that the Court award Resource Dealer Group, Inc. compensatory damages appropriate to proof at trial, exemplary damages to punish Defendants for their deliberate and willful misconduct, statutory damages as provided by law, and all costs

and expenses, including attorneys' fees, incurred by Resource Dealer Group, Inc. in connection with this action, plus such other and further relief as the Court may deem appropriate.

**VERIFICATION**

I solemnly affirm under the penalties of perjury that the contents of the foregoing Verified Complaint are true to the best of my knowledge, information and belief.

/s/
Richard K. Jobson

Respectfully submitted,

RESOURCE DEALER GROUP, INC.

Dated: March 21, 2006

By: /s/
One of its attorneys

Donald F. Burke, #08454
Scott H. Phillips, #013244
SEMMES, BOWEN & SEMMES
250 West Pratt Street
Baltimore, MD 21201
(410) 539-5040
(410) 539-5223 (fax)

WORD595219